UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINA M. MILLER, individually and as Administrator of the Estate of ROBERT G. MILLER, deceased, | ) ) ) 17 C 7473 ) |
| Plaintiff, | ) Judge Gary Feinerman ) |
| vs. | ) ) |
| MARK E. MILLER, individually and as Trustee of THE MILLER LIVING TRUST, dated April 17, 1995, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Constance M. Miller, an Indiana resident, established The Miller Living Trust in 1995 and then served as its trustee. Doc. 1-1 at ¶ 6; Doc. 8-3 at ¶ 2. After Constance died in February 2016, her son Robert Miller succeeded her as trustee. Doc. 1-1 at ¶ 11. Robert was an Illinois resident, along with his wife and our plaintiff, Christina Miller. *Id*. at ¶¶ 1, 15. After Robert died in August 2016, Mark Miller—Constance's other son, a Georgia resident, and our defendant—became the new trustee. *Id*. at ¶¶ 2-3, 16. Since assuming the role of trustee, Mark has administered the Trust in and from Indiana and Georgia. Doc. 8-3 at ¶ 12.

Believing that Mark paid her less than what she is owed under the Trust, Christina brought this diversity suit against him in the Circuit Court of Cook County, Illinois. Doc. 1-1. First, Christina claims that Mark breached his fiduciary duties to her as a beneficiary by remitting to her only $50,000, rather than half of the Trust's distributable assets (which well exceeded $100,000), and by pocketing the difference for himself. *Id*. at ¶¶ 1-25. Second, Christina claims that the same conduct constitutes tortious interference with expectancy and that Mark "intentionally inflicted duress" by sending her only $50,000 and by "providing sporadic

updates regarding certain Trust assets." *Id*. at ¶¶ 31-38. Third, Christina claims that Mark engaged in conversion by taking the rest of her share of the Trust's assets, and also by taking Constance's IRA (which is not part of the Trust) in its entirety rather than distributing half its assets to Christina. *Id*. at ¶¶ 26-30. Mark removed the suit to federal court, Doc. 1, and now moves under Civil Rule 12(b)(2) to dismiss for lack of personal jurisdiction, Doc. 7.

"The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it. Where, as here, the district court rules on a defendant's motion to dismiss based on the submission of written materials without holding an evidentiary hearing, the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (internal quotation marks and citation omitted). Although factual disputes are resolved in the plaintiff's favor, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003).

Robert sent Christina a $50,000 check from the Trust's bank account to her home in Illinois, and sporadically communicated with her regarding some of the Trust assets. Doc. 1-1 at ¶¶ 32, 34; Doc. 16 at 2. Christina alleges that, as a beneficiary of the Trust, she was owed far more than $50,000, and further that Mark communicated with her in order to "impose duress upon [her]" and to induce her to "cease and desist" her "inquiries regarding the status of the distribution of the Trust." Doc. 1-1 at ¶¶ 22, 33, 38. These facts and allegations provide a sufficient basis to exercise personal jurisdiction over Mark for Christina's Trust-related claims.

"A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp.*, 783 F.3d 695, 697 (7th Cir. 2015). The

Illinois long-arm statute permits a court to exercise personal jurisdiction "on any … basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Because "there is no operative difference between these two constitutional limits," a federal court sitting in Illinois asks "whether the exercise of personal jurisdiction would violate federal due process." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citations omitted).

"Under the Supreme Court's well-established interpretation of the Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ibid.* (internal quotation marks omitted); *see also Walden v. Fiore*, 571 U.S. 277, 283 (2014). The Supreme Court has "framed the constitutional inquiry in terms of whether the defendant purposefully avails itself of the benefits and protections of conducting activities in the forum state." *Mobile Anesthesiologists*, 623 F.3d at 444 (internal quotation marks omitted). To be subject to personal jurisdiction, "[t]he defendant's contacts must not be merely random, fortuitous, or attenuated; rather, the 'defendant's conduct and connection with the forum state' must be such that it should 'reasonably anticipate being haled into court there.'" *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)); *see also Walden*, 571 U.S. at 286.

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists*, 623 F.3d at 444; *see also Daimler AG v. Bauman*, 571 U.S. 117, 126-28 (2014). Only specific jurisdiction need be considered here, as Christina does not contend that Mark is subject to general jurisdiction in Illinois.

3

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities. The exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice." *N. Grain Mktg.*, 743 F.3d at 492 (internal quotation marks and citations omitted); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802-03 (7th Cir. 2014). When assessing specific personal jurisdiction, the "relevant contacts" are "defendant's *suit-related* conduct," which "must create a substantial connection with the forum State." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 801 (quoting *Walden*, 571 U.S. at 284) (internal quotation marks omitted). "The mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction. Furthermore, the relation between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum." *Ibid.* (quoting *Walden*, 571 U.S. at 291) (internal quotation marks omitted, alteration in original). In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 802 (quoting *Walden*, 571 U.S. at 285).

Where the plaintiff alleges an intentional tort—here, as to Christina's Trust-related claims, tortious interference with expectancy, fraud-based breach of fiduciary duty, and conversion—the purposeful direction inquiry "focuses on whether the conduct underlying the claims was purposely directed at the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). Three requirements must be satisfied to find that the defendant's "conduct was 'purposefully directed' at the forum state: '(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge

that the effects would be felt—that is, the plaintiff would be injured—in the forum state.'" *Felland v. Clifton*, 682 F.3d 665, 674-75 (7th Cir. 2012) (quoting *Tamburo*, 601 F.3d at 703). "If the plaintiff makes these three showings, he has established that the defendant 'purposefully directed' his activity at the forum state." *Id.* at 675; *see also John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 696 (7th Cir. 2018) (treating *Felland* as precedent).

All three requirements are met here. Christina alleges intentionally tortious conduct—Mark's sending her $50,000 check from the Trust rather than the larger amount she was owed, knowing that he was shorting her for his own personal gain, and his engaging in communications regarding the Trust intended to "impose duress on her." *See Felland*, 682 F.3d at 675 (holding that the defendant's "communications were intentional misrepresentations under Wisconsin law, which suffices to establish 'intentional and allegedly tortious conduct'"). Mark's alleged conduct was "expressly aimed" at Illinois—he sent the check to Christina in Illinois and directed communications to her there. And Mark surely knew the effects of his actions would be felt in Illinois—Christina's domicile before and after he became trustee, and the State to which he sent the insufficient check. *See ibid.* ("[T]here is no doubt that [the defendant] knew the alleged harm would be felt in Wisconsin. [The defendant] and his associates knew from the beginning that the [plaintiffs] were Wisconsin residents … and [the defendant] directed multiple communications via several different media to [the plaintiffs'] Wisconsin home.").

Because Mark "expressly aimed" his allegedly tortious conduct towards Christina in Illinois, with the knowledge that she would be injured there as a result, those contacts "are the cause in fact and the legal cause of [her] injury," and her claims therefore "arise directly out of [Mark's] contacts with Illinois." *Tamburo*, 601 F.3d at 709. It follows that this court has personal jurisdiction over Mark as to Christina's claims regarding the Trust assets. *See Sunny*

*Handicraft (H.K.) Ltd. v. Edwards*, 2017 WL 1049842, at *6-7 (N.D. Ill. Mar. 20, 2017) (holding that purposefully sending "two [defamatory] emails" to Illinois was sufficient to establish personal jurisdiction); *Linkepic Inc. v. Vyasil, LLC*, 146 F. Supp. 3d 943, 951-53 (N.D. Ill. 2015) (same for sending false invoices); *Levin v. Posen Found.*, 2015 WL 94230, at *5-6 (N.D. Ill. Jan. 6, 2015) (same for making two phone calls and sending four emails); *Barker v. Atl. Pac. Lines*, 2013 WL 4401382, at *4 (N.D. Ill. Aug. 14, 2013) (same for an individual defendant "complicit in [a] reclassification decision" resulting in the plaintiff's lost wages, where the defendant "communicated the reasons to [the plaintiff,] who was working … in Illinois at the time," and thus could reasonably have "anticipated being haled into an Illinois court"); *cf. John Crane, Inc.*, 891 F.3d at 696 (holding that there was no personal jurisdiction where the defendant's Illinois-related conduct was only incidental to the alleged tortious scheme).

Pressing the opposite result, Mark cites *Norton v. Bridges*, 712 F.2d 1156 (7th Cir. 1983), for the proposition that the State "[w]here the payment of trust assets to a beneficiary takes place does not … create a sufficient contact to give that forum jurisdiction." Doc. 17 at 13. *Norton* held only that a Wisconsin court could exercise jurisdiction over a trustee because Wisconsin was the "state most closely connected with the administration of the trust," even though the trustee resided in Illinois and made "payments of principal and/or interest to a beneficiary domiciled in a state other than Illinois." 712 F.2d at 1161-62. Norton does not speak to this case because it did *not* hold that personal jurisdiction would not *also* have been proper in Illinois or, for that matter, the State to which the proceeds were directed. Nor can Mark claim support from *Hanson v. Denckla*, 357 U.S. 235 (1958), which held that the defendant's remittance of trust income to a settlor did not establish personal jurisdiction in the settlor's State. In *Hanson*, the payment was ancillary to the plaintiff's case, *see id*. at 252, while the payment that Mark directed

6

to Christina to Illinois lies at the heart of her claims. *See Efird v. King*, 2007 WL 2237465, at *3-4 (W.D. Ark. Aug. 3, 2007) (drawing a similar distinction).

That Mark is subject to personal jurisdiction for Christina's Trust-related claims would not necessarily mean that personal jurisdiction is proper for her claims concerning Constance's IRA—which Christina states, Doc. 16 at 7, without contradiction, was not part of the Trust. *See* 4A Wright & Miller, Federal Practice & Procedure, § 1069.7 (4th ed. 2018) (addressing the contours of the pendent personal jurisdiction doctrine). Yet although the complaint devotes significant attention to the IRA-related claims, Doc. 1-1 at ¶¶ 27-30, Mark's initial brief does not even mention the IRA, let alone argue that he was not subject to personal jurisdiction in Illinois for the IRA-related claims. And while Mark belatedly addresses those claims in his reply brief, Doc. 17 at 7-11, arguments made for the first time in a reply brief are forfeited. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003) ("Because Volvo raised the applicability of the Maine statute in its reply brief, the district court was entitled to find that Volvo waived the issue.").

For these reasons, Mark's Rule 12(b)(2) motion is denied.

July 16, 2018

_____
United States District Judge

7